IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| | : | Criminal Action No. 06-06 KAJ |
| RASHAN J. BAUL, | : | |
| Defendant. | : | |

**GOVERNMENT'S POST-HEARING REPLY BRIEF
ON DEFENDANT'S MOTION TO SUPPRESS**

COLM F. CONNOLLY
United States Attorney

Douglas E. McCann
Assistant United States Attorney
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, Delaware 19899-2046

DATED:    November 20, 2006

**TABLE OF CONTENTS**

I. <u>Franks</u> Does Not Apply . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. The Information About Demetrius Brown Does Not Undermine Reasonable Suspicion . 2

III. The Baker Decision Does Not Require Discounting The Concealed Violations . . . . . . . . 5

IV. The Procedures Used to Approve This Search Do Not Require Suppression . . . . . . . . . . 7

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## TABLE OF AUTHORITIES

**FEDERAL CASES**

Franks v. Delaware, 438 U.S. 154 (1978) .......................................... 1,2

Knowles v. Iowa, 525 U.S. 113 (1999) ............................................. 6

Samson v. California, 126 S.Ct. 2193 (2006) ....................................... 9

United States v. Baker, 221 F.3d 438 (3d Cir. 2000) ............................. 5,6,7

United States v. Caceres, 440 U.S. 741 (1979) ..................................... 8

United States v. Williams, 417 F.3d 373 (3d Cir. 2005) ........................... 2,9

**STATE CASES**

Fuller v. Delaware, 844 A.2d 290 (Del. 2004) ..................................... 7,8

The United States, by and through Colm F. Connolly, United States Attorney for the District of Delaware, and Douglas E. McCann, Assistant United States Attorney for the District of Delaware, hereby files its post-hearing reply brief on defendant Rashan J. Baul's Motion to Suppress. D.I. 18.

I.   **Franks Does Not Apply**

The defendant argues that the Court should analyze this case under the rubric of Franks v. Delaware, 438 U.S. 154 (1978). Franks, as the defendant notes, provides a mechanism for courts to deal with allegations that a warrant issued by a magistrate was based on an affidavit of probable cause that contained material false statements or omissions. Recognizing that this case involves no magistrate and no warrant, the defendant assigns the role of hypothetical magistrate to Supervisor Cronin (because he must approve the search), and that of hypothetical affiant to Officer Kelly (who must obtain Cronin's approval before conducting the search). D.I. 36 at 14.

The defendant's argument is wrong for two reasons. First, no court applies Franks to probation searches.[1] Second, the argument is a non sequitur. In a Franks scenario, the courts are concerned that a magistrate judge issued a warrant that was based on materially false information, or omitted material information. In other words, the magistrate knows **less** than the affiant because she has been misled, or not told everything, about material matters. But in the defendant's scenario, "Magistrate Judge" Cronin (the defendant argues) knows **more** than "Affiant" Kelly – that is, Cronin is already aware of the alleged material omissions that Kelly should have told him about, but for the fact that Cronin supposedly withheld the information from Kelly.

---

[1] Also, because this case does not involve a warrant issued by a magistrate, the government will not address the "good-faith exception" arguments raised by the defendant at pp. 13-17 of his brief.

The defendant's argument is also unnecessary. Supervisor Cronin gave the required approval for the search. The record contains the information that he knew when he approved the search. That information includes the information he learned from Officer Kelly's review of the defendant's file, and the information he knew from sources other than Officer Kelly. The totality of this information either rises to reasonable suspicion, or it does not. There is no need to superimpose Franks on the question.

## II.     The Information About Demetrius Brown Does Not Undermine Reasonable Suspicion

The government argued in its opening brief that the presence of drugs in the defendant's car is appropriately assessed as part of the totality of circumstances in determining whether there was reasonable suspicion to conduct the search. The defendant contends that the Court should not consider the drugs. D.I. 36 at 9-10. This is so, the defendant argues, because Supervisor Cronin knew (1) Demetrius Brown was seen driving the defendant's car (2) Brown fled upon the approach of police; (3) Brown was seen in the area of the defendant's car prior to the discovery of drugs in the car; and (4) the police only wanted to speak to defendant to ask him about Brown. D.I. 36 at 4. With respect to the first three facts, the relevant point, from the perspective of an agency whose job it is to ensure probationers comply with the terms of their probation, is that the defendant's car had crack cocaine in it. As Supervisor Cronin said: "The occupation issue was the cocaine that occupied the car, not Demetrius Brown or Rashan Baul. The issue of the car was that it was registered to a Rashan Baul." Tr. at 78; *see also* Tr. at 76-78. As to the last fact, Detective Looney's motive for calling Probation is irrelevant. See United States v. Williams, 417 F.3d 373, 377-78 (3d Cir. 2005) (holding inquiry into official purpose for search impermissible). His job is to investigate crime. Probation's job is to monitor probationers.

2

The defendant also argues that Detective Looney told Probation prior to the search that Baul had stated that he sold the car. D.I. 36 at 13 (citing Tr. at 84-86. 90-91), and that this knowledge should eliminate the drugs from the reasonable suspicion calculus.

First, the record does not indicate that Supervisor Cronin, or Officer Kelly, knew prior to the search, that Baul claimed that he sold the car. Detective Looney observed Brown's activities on December 9, and communicated to GTF the information that he had after that date. Tr. at 76 (Cronin learned about the drugs in the car on the 12th); Tr. at 23 (Kelly recalling the date as the 12th); Tr. at 85 (Looney recalling that he reported the information to GTF **before** he interviewed Baul on the 14th). Detective Looney caught up with Baul on December 14 and it was during this interview that Baul claimed that he sold the car. Tr. at 82-83. The search took place that night – however, Detective Looney did not recall speaking to GTF after he learned this information. Tr. at 89. The defendant points out that Detective Looney recalled speaking to either Officer Kelly or Corporal Popp (but not Cronin), D.I. 36 at 13, n. 5 (citing Tr. at 85). Corporal Popp testified he knew nothing about the case prior to the search. Tr. at 62. Officer Kelly testified that while he did speak to Detective Looney, it was "after the fact." Tr. at 37.

Kelly recalled that at the December 12 meeting, he was told the following:

```
8:15                THE COURT: Before you go further, I
  16 want to back up a moment and make sure I understood
  17 something.
  18                What exactly is it that the Supervisor
  19 Cronin told you, sir?
  20                THE WITNESS: He told me that he had
  21 received information, through the Wilmington Police
  22 Department, that a vehicle in the City of Wilmington, I
  23 believe it was 2300 block of Pine Street, it was an
  24 unoccupied vehicle registered to Mr. Baul, and in that
9: 1 vehicle was found three-and-a-half ounces of cocaine, I
   2 believe.
```

3

Supervisor Cronin testified that he did not receive his information from Detective Looney, but rather from Probation Supervisor Craig Watson, and that the information was the following:

```
76:22      Q.   What was the information he relayed to you?
   23      A.   That a car in which Demetrius Brown had been
   24 observed and had fled from was found with what was
77: 1 described as more than three ounces of cocaine and that
    2 that vehicle was registered to Rashan Baul.
```

Thus, neither Supervisor Cronin and Officer Kelly testified that they received any further information prior to the search from the Wilmington Police (or anywhere else) after they received the initial report, and neither testified that they spoke to Detective Looney before the search. While it is true that Detective Looney testified

```
90:24      Q.   And it's fair to say that you told the members
91: 1 of the, whoever you spoke to at the Governor's Task
    2 Force, that you were looking for Rashan Baul to find out
    3 who he sold the car to; correct?
    4      A.   Correct[,]
```

Detective Looney was apparently confusing the "after the fact" conversation described by Officer Kelly, and not any pre-search discussion.[2]

Second, the defendant asks the Court to treat this statement that he had sold the car as unvarnished truth, and that, therefore, no reasonable person could possibly believe he had any connection to the drugs in the car. However, the statement is self-serving and deserving of little weight in analyzing the appropriateness of the search. It is undisputed in the record that the car was registered to Defendant Baul when the drugs were found. Tr. at 8 (Kelly); Tr. at 77 (Cronin); Tr. at 84 (Looney). This is probative of ownership by Baul, not Brown. In addition, Baul's

---

[2]On this point, the government notes that it called Officer Kelly in rebuttal where, in response to an objection, it made an offer of proof that in part was to the effect that Officer Kelly learned from Detective Looney **after** the search took place that the defendant said he had sold the car. Tr. at 94. The government also makes an offer of proof here that Supervisor Cronin would say that he also learned about Baul's statement after the search took place. Although the government believes the record is already sufficiently clear, and also believes for the reasons stated below that Baul's self-serving statement should be discounted, to the extent the Court wants clarification on this point, the government respectfully requests that the record be re-opened to permit this testimony to be elicited.

4

criminal record of property crimes including theft, receiving stolen property and burglary (Tr. at 17-18) as well as his pattern of concealing probation violations from Probation would cause a reasonable person to be dubious of any statements he made about who owned what.[3] Finally, as Detective Looney testified, people often lie to police officers, Tr. at 89

Thus, even if Cronin and Kelly had been told that Baul claimed he sold the car (which the record indicates they had not), in light of its continued registration to Baul, and his record discussed above, they would have been reasonable in discounting that statement during their assessment of reasonable suspicion.

### III.     The *Baker* Decision Does Not Require Discounting The Concealed Violations

The defendant argues that the Third Circuit's decision in United States v. Baker, 221 F.3d 438 (3d Cir. 2000) "indicates that Mr. Baul's traffic violations could not have supplied Probation and Parole with the authority to search his home." D.I. 36 at 10. In Baker, the defendant drove a car to a scheduled meeting with his parole officer, notwithstanding the fact that a condition of his parole forbad him to drive without a license. Baker, 221 F.3d at 440. A parole officer asked Baker whether he had a driver's license. He said that he did not. Baker was arrested when attempting to drive away after the meeting. After arresting Baker, the officer's searched the trunk of the car, where they found drug paraphernalia. The officers then conducted a warrantless search of Baker's home, where they found guns and heroin. Id. The Third Circuit reversed the district court's denial of defendant's motion to suppress, stating "neither Baker's violation of his

---

[3] Indeed, if, as the defendant suggests, a reasonable magistrate would want to know that the defendant sold the car (D.I. 36 at 9), perhaps she would also want to know that he made two statements about selling a car – to Detective Looney, he said it was in exchange for cash; to Corporal Popp, he said he traded it to a friend for a gun. Tr. at 92. Of course, Probation could not have known about the latter (post-search) statement, and, the record indicates, did not know about the former (day of search) statement, and so both are irrelevant.

5

parole by driving a vehicle nor his failure to document that he owned the vehicle can give rise to a reasonable suspicion that he was committing other, unspecified, unrelated parole violations-the evidence of which might be found in the trunk." Id. at 445. The Third Circuit also stated "the parole officers' actions were not based on 'specific facts' giving rise to suspicion that there would be some evidence of a further violation of parole in the trunk." Id. at 444.

The Baker court (and the defendant here) also cite to Knowles v. Iowa, 525 U.S. 113 (1999). In Knowles, the Supreme Court held that a complete search of an automobile pursuant to a state statute following the issuance of a traffic citation (but no arrest) violated the Fourth Amendment. Id. at 115-16. The Supreme Court held that one of the traditional justification for approving a search incident to arrest – that is, the need to discover and preserve evidence – did not apply because "once Knowles was stopped for speeding and issued a citation, all the evidence necessary to prosecute that offense had been obtained. No further evidence of excessive speed was going to be found either on the person of the offender or in the passenger compartment of the car." Id. at 118. Also, in response to respondent Iowa's argument that a "search incident to citation" was justified because (among other things) a suspect who is subject to a routine traffic stop may destroy evidence of another, as yet undetected crime, the Supreme Court stated "as for destroying evidence of other crimes, the possibility that an officer would stumble onto evidence wholly unrelated to the speeding offense seems remote." Id.

Baker and Knowles are distinguishable. In both cases, the facts supporting the search concerned a single incident. In Baker, the parolee drove a car without a license. In Knowles, the petitioner was speeding. As the respective courts indicated, all the information the investigating officers needed to prosecute the particular violation was known to them at the time of the initial encounter, and they could point to no specific facts indicating there was something more. Here,

6

the relevance of the "technical" violations is not the fact of a particular violation, but rather, the continuing, regular pattern of violations on an average of one per month over a six month period, and the concealment by the defendant of most of those violations from Probation. This pattern, combined with the defendant's history of probation violations, and with the information about drugs in the defendant's car, viewed in their totality, are the "specific facts giving rise to suspicion that there would be some evidence of a further violation" at defendant's home. Baker, 221 F.3d at 444; D.I. 35 at 9.[4]

### IV.   The Procedures Used to Approve This Search Do Not Require Suppression

In response to the question posed by the Court at the hearing, Tr. at 98-99, and the government's argument, D.I. 35 at 10-14, the defendant argues that a violation of Probation's internal Procedure 7.19 (D.I. 35, Ex. A) makes this search invalid. D.I. 36 at 17-18. The defendant argues that a failure to follow this procedure violates Delaware law, citing a 1998 Superior Court case. The defendant tries to distinguish the 2004 Delaware Supreme Court case, Fuller v. State, 844 A.2d. 290 (Del. 2004) that reaches the opposite (and controlling) conclusion by pointing out that Fuller concerned the search of an automobile and not a home. Fuller is inapposite, the defendant argues, because there is a longstanding "automobile exception" to the Fourth Amendment's warrant and probable cause requirement for searches. D.I. 36 at 19. The defendant's distinction is irrelevant, because both the "automobile exception" and the search of a probationer's home without a warrant based on reasonable suspicion are equally valid exceptions

---

[4]Defendant questions the reasonableness of Officer Kelly's suspicion that he might find evidence of violations that occurred outside of Delaware. D.I. 36 at 12. Of course, all of the violations incurred (and concealed) by Mr. Baul involved Delaware police agencies. GX 2. It is reasonable for Officer Kelly to suspect based on the pattern that the defendant had committed (and concealed) more violations than Probation had discovered on its own, and that it would be easier to conceal those not involving Delaware police agencies, because of the greater difficulty in accessing records of police contact outside Delaware.

7

to the Fourth Amendment's warrant / probable cause requirement. The defendant's distinction is also wrong because it ignores the point of Fuller (and this Court's question posed at Tr. 99), that while Procedure 7.19 advances the goal of ensuring that reasonable grounds for a search exist, the procedures are not independently necessary to showing reasonable grounds, and that the failure to follow them does not violate Delaware law in a way enforceable by a defendant through suppression of evidence. See Fuller, 844 A.2d at 291.

The defendant also attempts to distinguish United States v. Caceres, 440 U.S. 741 (1979). The defendant points to language in Caceres where the Supreme Court observed that while government regulations required Department of Justice approval for the Internal Revenue Service to record a conversation, no federal statute required such approval. D.I. 36 at 20-21. The defendant argues that this case stands in contrast to Caceres because Delaware law does require prior approvals of a search. Id. That is no distinction because Officer Kelly **did** get approval, on December 12 (in person and in writing) and again on December 14 (verbally) – in a manner specifically held by the Delaware Supreme Court in Fuller to not violate any Delaware statute.

The defendant also tries to distinguish Caceres by arguing that while the defendant in Caceres was not protected by the Constitution from having his conversations consensually recorded by a government agent, the Constitution does protect homes from searches. D.I. 36 at 21. The defendant further argues that Caceres involved federal regulations, and not state regulations, and so is inapplicable. The government agrees that the search of the defendant's home must be Constitutionally supported - in this case by reasonable suspicion. However, the point of Caceres, in relation to the Court's question at the hearing, is that, to the extent that Procedure 7.19 is read to require a written approval prior to a search, that state regulation is no more Constitutionally required than the federal regulation requiring IRS agents to get Department

8

of Justice approval before consensually recording a conversation. Thus, a failure to follow the regulation is not enforceable by a defendant through suppression.[5]

Finally, in its opening brief, the government pointed out that the Third Circuit's decision in <u>Williams</u> identified a second path to upholding a search without regard to the requirements of Probation's policies – where a probationer agreed (as is the case here) to a probation search condition. <u>Williams</u>, 417 F.3d at 378. In such cases, the Third Circuit concluded that district courts could analyze the problem under ordinary Fourth Amendment principles. <u>Id</u>. In this case, that means assessing whether the search was supported by reasonable suspicion. Although the defendant points out that the <u>Williams</u> case dealt with a Pennsylvania search, and not a Delaware search, he does not explain what difference this makes, and it in fact makes no difference.

---

[5]The defendant spends two pages arguing that the government's brief reference to <u>Samson v. California</u>, 126 S.Ct. 2193 (2006) "[implied] that the search of [the defendant's] residence could be upheld . . . without reasonable suspicion." D.I. 36 at 22-23. The government was clear (D.I. 35 at 8) that the standard here is reasonable suspicion. The government's point in citing <u>Samson</u> is clear from its context (D.I. 35 at 11-12) and will not be reiterated here.

9

## CONCLUSION

WHEREFORE, the government respectfully requests that the Court deny the Motion to Suppress, for the reasons stated above, and for the reasons stated in its opening brief. D.I. 35.

Respectfully submitted,

COLM F. CONNOLLY
United States Attorney

By: _____
Douglas E. McCann
Assistant United States Attorney
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899
(302) 573-6277 x128

Dated: November 20, 2006

## CERTIFICATE OF SERVICE

I, Douglas E. McCann, hereby certify that on November 20, 2006, I served the foregoing:

**GOVERNMENT'S POST-HEARING REPLY BRIEF
ON DEFENDANT'S MOTION TO SUPPRESS**

by CM/ECF on

>Eleni Kousoulis, Esquire
>First Federal Plaza
>704 King Street, Suite 110
>Wilmington, Delaware 19801

*/s/ Douglas E. McCann*
Douglas E. McCann